# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 5, 2014

## JAMES BUCK v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Tipton County**
**No. 7339     Joseph H. Walker, Judge**

---

**No. W2013-01736-CCA-R3-PC  - Filed April 3, 2014**

---

The Petitioner, James Buck, pled guilty to failure to appear, with the trial court to determine the length and manner of service of his sentence.  The trial court sentenced the Petitioner as a Career Offender to serve six years in the Tennessee Department of Correction.  The Petitioner timely filed a petition seeking post-conviction relief on the basis that he received ineffective assistance of counsel, which the post-conviction court denied after a hearing.  The Petitioner now appeals, maintaining that he is entitled to relief based upon his attorney's deficient representation.  After a thorough review of the record, the briefs, and relevant authorities, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Lyle A. Jones, Covington, Tennessee, for the Appellant, James Buck.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin E.D. Smith, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Jason R. Poyner, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

The Petitioner was charged with possessing stolen credit cards.  At a subsequent court appearance related to those offenses, the Petitioner failed to appear.  A Tipton County grand jury indicted the Petitioner for failure to appear, a Class E felony.  The Petitioner pled guilty to all of the charges, with the trial court to determine the sentences.  At a subsequent

sentencing hearing, the trial court sentenced the Petitioner to serve six years as a Career Offender.

## A. Guilty Plea Submission Hearing

At the guilty plea submission hearing, the trial court discussed with the Petitioner the charges and the range of sentences that the Petitioner might receive at the subsequent sentencing hearing. Specifically, the trial court stated that a six-year sentence would be imposed for the felony failure to appear conviction if the trial court determined the Petitioner was a Career Offender. The trial court also stated, "[Counsel] would ask for probation or suspension, but there's no guarantee that that will be granted." The Petitioner affirmed his understanding of the charges and the range of possible sentences. The trial court then reviewed the Petitioner's rights and the waiver of those rights as it related to the entry of guilty pleas. The Petitioner once again affirmed his understanding. The Petitioner confirmed that he understood his decision to plead guilty and that he was doing so voluntarily. The State presented the following factual basis for the trial court's acceptance of the guilty pleas:

> [Case no.] 7339 was the case that got it started. [Case no.] 7339 is a three-count indictment alleging [the Petitioner], on dates of June 13, 2011, possessing a Bank of America Visa credit card of a Judy Watkins at the Kroger in Atoka in Tipton County; and then the other two counts are the possession on June 17, four days later, 2011, of a Discover credit card in Count 2, and of a Bank of America Master credit card in Count 3 of Michaelynn Morgan; that is, Counts 2 and 3 are the same victim, two different cards.

> And the State's proof would be that on the first date [the Petitioner] was observed by a manager. Once [Judy Watkins] noticed that her card was missing, a review of the tape indicated a gentleman fitting the description of [the Petitioner] and wearing a very distinctive sort of a shirt, the video has him taking - - going up to the basket as it's unattended of Ms. Watkins and taking her . . . Visa credit card. There was - - then an attempt was made to use it. There was a ding on it, but I don't think it was actually used, but an attempt was made to use it.

> So the Atoka manager had studied this and was really kind of looking to see if he could see [the Petitioner] again or the person that had taken the card. Four days later [the Petitioner] came back to the same Kroger there in Atoka, wearing the same shirt, very distinctive shirt. He was stopped, he was questioned, and he had, at this time he had the card in his possession. He had cards in his possession of both Ms. Watkins and Ms. Morgan.

Being charged with these A misdemeanors, [the Petitioner] had a court date set in Sessions, and he failed to appear. That's the [case no.] 7339.

On [case no.] 7340 Ms. Watkins was shopping on June 13, at ten in the morning. Video showed a male black reaching inside her purse, removing an object, placing the item in the hand basket, that being the wallet with her Visa card and other items. The video showed the male black exiting the store out of camera view.

A detailed description and captured stills were sent to local agencies. A charge to a local gas station and an attempt to get a Verizon phone was made on Ms. Watkins' card within an hour.

On June 17, which will be Count 2, the store manager walked by a male black, who was [the Petitioner], wearing the exact clothing as the male black in the store video. Investigator Ellwood arrived at the Kroger. Mr. Buck was identified as the person who had taken Ms. Watkins' card four days earlier.

A search incident to arrest revealed two other credit cards belonging to Michaelynn Morgan who had had her purse stolen at another Kroger in Germantown on May 29. Ms. Morgan stated her Bank of America card showed charges to a gas station and coincidentally also an attempt to charge a Verizon phone. So Ms. Morgan's card was taken at a Kroger in Shelby County. She couldn't get the satisfaction of the thief being arrested on the Shelby County charge, but fortunately when [the Petitioner] returned to the scene of the crime he had still Ms. Morgan's cards on his person.

So the State believes that it can carry its burden of proof in this matter, Your Honor, as far as the illegal possession of the cards [in case 7340] of both [Ms. Watkins's cards] on June 13, 2011, when he took that from her cart, and on June 17, 2011, when he possessed the cards of Ms. Morgan, and certainly in [case no.] 7339 when he did not show up in court on these A misdemeanors.

After determining that there was a factual basis to support the plea and that the Petitioner was competent to enter a guilty plea, the trial court accepted the Petitioner's guilty pleas as to all three counts charged. At a later sentencing hearing, the trial court sentenced the Petitioner as a Career Offender to serve six years in the Tennessee Department of Correction. None of the judgments of conviction are included in the record on appeal. The sentencing hearing transcript was also not included in the record on appeal, but in its order denying post-conviction relief, the post-conviction court recited the following about the

sentencing hearing:

> At the sentencing hearing on October 24, 2012, the pre-sentence report was prepared and considered. It was determined that the [Petitioner] was a Career Offender. He was denied probation due to the lengthy record and the fact that he had an additional 41 misdemeanor convictions for fraud, theft, or shoplifting, and other convictions. He has had his parole revoked in 1991, and probation revoked in 1998, 2002, and 2006. He expired some sentences. The misdemeanor convictions in RD 7340 were run concurrent with the felony conviction in RD 7339.

## B. Post-Conviction Hearing

The Petitioner filed a post-conviction petition claiming that he had received the ineffective assistance of counsel because his attorney ("Counsel") had failed to explain the "full stipulations of the guilty plea and inducing [the] Petitioner to plead guilty to the maximum sentence through promises of probation." At the hearing on the petition, Counsel testified that he met with the Petitioner two or three times and that he wrote to the Petitioner on several occasions as well. Counsel explained that another attorney in his office had represented the Petitioner and experienced difficulty communicating with the Petitioner. Counsel became involved at that point to try to help the Petitioner understand various aspects of his case.

Counsel testified that the Petitioner was "adamant" that one could not be charged with a felony for failure to appear. Counsel said that he went "round and round" with the Petitioner about whether a failure to appear could be charged as a felony. The Petitioner had a "lengthy history" that included many missed court dates in Shelby County, however, this was the Petitioner's first felony charge for failure to appear.

Counsel testified that the Petitioner acknowledged that he was aware of the court date. The Petitioner explained to Counsel that his grandfather had died, so he made the decision not to go to court because he had "things on [his] mind." Counsel noted that the Petitioner did not just attend a funeral and then voluntarily return to meet court obligations. The Petitioner was later arrested in Shelby County and then returned to Tipton County to face his charges. Counsel said that he told the Petitioner that his decision not to attend court was not a defense to the crime for which he was charged. For this reason, Counsel did not believe going to trial was "really an option." Counsel said that he thought the Petitioner would "do better" at a sentencing hearing than at trial. Counsel said that he anticipated a sentence involving probation, but, at that time, he did not realize the full extent of the Petitioner's criminal history that was later relied upon by the trial court to deny a probation sentence.

-4-

Counsel testified that the Petitioner was "properly Noticed" that he could be sentenced as a Career Offender. Counsel stated that, as a Career Offender, an E felony would require a six-year sentence. Counsel said that he discussed with the Petitioner the possibility of probation or house arrest as sentencing options for the six-year sentence but that he advised the Petitioner the only sentence possible was "six years at 60 percent." Counsel identified a letter he wrote to the Petitioner wherein he wrote, "Given all the circumstances, I believe the Court would suspend all but time served and place you on probation or house arrest, and you would be released November 1." Counsel stated that he also discussed in the same letter options about whether the Court could grant relief at the sentencing hearing. Counsel informed the Petitioner in the letter that the trial court would make the decision about the manner of sentencing. Counsel said that he provided the Petitioner with law related to his sentence to help him understand that his failure to appear charge was a felony and would be a six-year sentence.

Counsel testified that the Petitioner wrote him a letter stating that he did not want to go to trial but rather wanted to plead "as quickly as possible." Counsel said that, based on this communication, he believed the Petitioner was "really tired" of being in a county facility and sought to be moved to prison, which would potentially be closer to "home." A guilty plea would expedite this process more quickly than scheduling and waiting for a trial.

Counsel testified that the Petitioner never indicated that he would only accept a plea offer that included probation. Counsel told the Petitioner that the State was not offering a sentence involving probation and that the alternative was to proceed to trial. Counsel agreed that, after sentencing, the Petitioner was "unhappy" with his sentence. Counsel informed the Petitioner that they could ask the trial court to reconsider the sentence or a "time cut." Counsel said that he did not discuss the Petitioner's right to appeal with him. He explained that he did not do so because he did not see a basis upon which to appeal and because the Petitioner, who had a great deal of experience with the criminal process, never mentioned an interest in an appeal.

Counsel testified that he did not initially realize the extent of the Petitioner's criminal history. The Petitioner had disclosed that he had an extensive criminal history, and Counsel was aware that the Petitioner qualified as a Career Offender based on his convictions. Counsel stated that he did not realize how many violations of probation the Petitioner had committed. He knew the Petitioner had "a lot" of misdemeanors, but he did not see a complete list of the Petitioner's specific misdemeanor convictions until he reviewed the presentence report.

The Petitioner testified that Counsel never discussed his charges with him, but only conveyed the State's offer of six years at sixty percent. He said that Counsel told him that

he would serve his sentence on house arrest for one year and then, if he successfully completed the house arrest, he would serve the remainder of his sentence on probation. The Petitioner denied that Counsel ever told him that there was a chance that the trial court would not grant probation.

The Petitioner testified that Counsel never discussed the elements of the offense of failure to appear or the procedure involved should he elect to try his case. The Petitioner stated that he wrote Counsel a letter stating that he wanted "a plea deal." About his sentence, the Petitioner stated, "six years, that's not a plea deal" because six years was the maximum sentence for the failure to appear conviction. The Petitioner said that Counsel never informed him of his right to appeal. The Petitioner recalled that, after the sentencing hearing, Counsel attempted to discuss probation with him, but the Petitioner told Counsel he did not want to talk with him because Counsel had "misled" the Petitioner. The Petitioner said that he would not have pled guilty if he had known that there was a chance that he would not receive a probation sentence. The Petitioner stated, however, that he never told Counsel that he would not plead guilty if there was a chance he would not receive a probation sentence.

On cross-examination, the Petitioner stated that he did not know that six years was both the minimum and maximum sentence for a failure to appear, E felony, conviction. The Petitioner said that he had never gone to trial on any of his previous charges but maintained that he wanted to proceed to trial in this case, if he was not going to be sentenced to probation. The Petitioner acknowledged that the trial court told him at the guilty plea submission hearing that probation might not be granted at sentencing but stated that he relied on Counsel's representation that he would be sentenced to probation.

After hearing the evidence, the post-conviction court issued an order denying relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that he received the ineffective assistance of counsel because: (1) Counsel told him he would receive a probation sentence; (2) Counsel failed to adequately research the Petitioner's criminal history; (3) the Petitioner received no consideration for his guilty plea; and (4) Counsel failed to advise the Petitioner of his right to appeal. The State responds that the Petitioner has not adequately demonstrated that he received the ineffective assistance of counsel. We agree with the State.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d

453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462.

Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a

different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad,* 938 S.W.2d at 369).

If a petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." *Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In an order, the post conviction court made the following findings as to the Petitioner's allegations:

> Counsel testified that he spoke with [P]etitioner, as did others in the office. He sent a letter outlining the law with regard to failure to appear. The [P]etitioner insisted that failure to appear was a misdemeanor, and [C]ounsel explained that it could also be a felony offense. The letter clearly stated that due to the prior history, the length of the sentence is 6 years, and release eligibility percentage (60) is required by law. There will be a hearing for the purpose of suspending the sentence and/or placing you on house arrest for the balance of the sentence.

> [The] Petitioner testified that he entered a plea because he would get probation. He stated that [C]ounsel presented that he would get probation. He states that [C]ounsel did not tell him that he might not get probation. However, the Court does not accredit that testimony. The attorney stated differently, and the [P]etitioner was told differently during the plea hearing. The court accredits the testimony of [C]ounsel that [the P]etitioner refused to believe [the failure to appear charge] was not a misdemeanor, and that [the P]etitioner was told the sentence will be 6 years, and that there will be a hearing to determine whether or not he would be granted house arrest or probation. [The] Petitioner testified that he knew that the Judge determines whether he would get probation.

[The] Petitioner entered a plea and was sentenced as a Career Offender to 6 years. The [Petitioner] was disappointed that he did not receive a suspended sentence, but that was not the fault of his attorney. The [P]etitioner had prior felony convictions and multiple misdemeanor convictions. He had expired some sentences, and had both parole and probation revoked. The decision to deny probation was a decision by the court.

. . . .

Counsel testified that he did not consider the sentencing to be in error, or that an appeal would benefit. [The] Petitioner did not make it known to [C]ounsel that he desired to appeal the sentence, and it was not ineffective to not appeal when [C]ounsel did not believe an issue for appeal existed.

## A. Probation Sentence

The Petitioner contends that Counsel told him he would receive a probation sentence. The Petitioner maintains that if he had known there was no guarantee of release on probation, he would have rejected the plea agreement and proceeded to trial. The State responds that the evidence does not preponderate against the trial court's findings that Counsel informed the Petitioner about the possible sentences relative to his plea. We agree with the State.

The record reflects that Counsel advised the Petitioner of the sentencing options, both verbally and by written letter. The guilty plea submission hearing transcript reflects that the trial court also advised the Petitioner that there was no guarantee of a probation sentence. In addition, the post-conviction court did not accredit the Petitioner's allegations regarding Counsel's performance. *See Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009). The Petitioner has failed to prove that Counsel's performance was deficient, and he is not entitled to relief as to this issue.

## B. Criminal History

The Petitioner asserts that Counsel was ineffective for being "unaware of [the Petitioner's] complete criminal history." The Petitioner, however, makes no explanation as to how this alleged deficiency prejudiced the outcome of the proceedings.

Counsel testified that he was aware of the Petitioner's status as a Career Offender. He said that the Petitioner was forthcoming about his criminal history, which included felonies and "a lot" of misdemeanors. Counsel explained he did not have a "specific list" of all of the Petitioner's misdemeanors until he received the presentence report. He further stated that, at the time he believed the Petitioner might receive a sentence involving probation, he did not

know that the Petitioner had been an absconder.

The Petitioner has presented no proof to establish that had Counsel possessed a full list of each of the Petitioner's misdemeanor criminal convictions, the Petitioner would not have entered a guilty plea and would have proceeded to trial. *Hicks*, 983 S.W.2d at 246. The Petitioner is not entitled to relief as to this issue.

## C. Consideration

The Petitioner relies upon Tennessee Rule of Criminal Procedure 11(c) in his assertion that he is entitled to relief on the basis that he "received absolutely no consideration for his plea."

Tennessee Rule of Criminal Procedure 11 (c) provides:

(c) Plea Agreement Procedure.

(1) In General. The district attorney general and the defendant's attorney, or the defendant when acting pro se, may discuss and reach a plea agreement. The court shall not participate in these discussions. If the defendant pleads guilty or nolo contendere to a charged offense or a lesser or related offense, the plea agreement may specify that the district attorney general will:

    (A) move for dismissal of other charges;

    (B) recommend, or agree not to oppose the defendant's request for, a particular sentence, with the understanding that such recommendation or request is not binding on the court; or

    (C) agree that a specific sentence is the appropriate disposition of the case.

It appears that the Petitioner is arguing that the State is required to include one of these provisions in the plea agreement as contractual "consideration" for the Petitioner. We do not read 11(c) to provide for such. The language of the rule states that the plea agreement "may specify" one of the listed options. It does not require that one of the three listed options be included in all plea agreements. Accordingly, the Petitioner is not entitled relief as to this issue.

## D. Right to Appeal

-10-

The Petitioner asserts that Counsel was deficient for failing to inform the Petitioner of his right to appeal his sentence. The State responds that the Petitioner has failed to show that he intended to file an appeal.

Counsel testified that he did not discuss an appeal with the Petitioner because he did not see a basis for the appeal. The post-conviction court accredited Counsel's testimony in this regard. The Petitioner never alleged or testified at the post-conviction hearing that he intended to file an appeal. Moreover, the Petitioner did not present any evidence that he was prejudiced by Counsel's representation. The Petitioner appears to rely solely on Counsel's admission that he did not advise the Petitioner of his right to appeal. The record does not indicate nor does the Petitioner assert that he ever requested that Counsel file an appeal or that he wanted to appeal his sentence. Accordingly, the Petitioner has failed to show by clear and convincing evidence that Counsel was deficient and he was prejudiced by the representation. The Petitioner is not entitled to relief as to this issue.

## II. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE